UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| METRO SEWER SERVICES INC., | ) | Case No.  6:05-BK-13530-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| SCOTT R. FRANSEN, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 6:06-AP-00112-KSJ |
| | ) | |
| vs. | ) | |
| | ) | |
| NICASSIO CORPORATION, | ) | |
| STEPHEN CUDD, and | ) | |
| LOUIS V. NICASSIO, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
PARTIALLY GRANTING AND PARTIALLY DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this adversary proceeding, Scott R. Fransen, the Chapter 7 Trustee, filed a Motion for Partial Summary Judgment (the "Motion") (Doc. No. 34) in connection with six of the nine counts contained in his Complaint against the defendants, the Nicassio Corporation ("Nicassio"), Stephen Cudd ("Cudd"), and Louis V. Nicassio ("Louis") (collectively, the "Defendants"). The trustee is seeking, under a variety of legal theories, to recover funds of the debtor, Metro Sewer Services Inc. ("Metro"), allegedly transferred at the behest of one or more of the Defendants, and also to hold Nicassio responsible for the entire amount of the estate's debt.  Specifically, the trustee argues that: (i) transfers of Metro's property totaling $1,764,743.93, occurring between

February and October of 2005, are avoidable pursuant to Bankruptcy Code[1] Sections 548(a)(1)(A) and (B) (Counts I and II); (ii) Cudd and Louis are personally liable for improper transfers because they breached fiduciary responsibilities they owed to Metro as de facto officers of Metro (Count VI); and (iii) Metro incurred damages totaling at least $3,436,557.80 as a result of a de facto merger (Count IV) or a joint venture (Count V) between Nicassio and Metro. Lastly, the trustee argues that a proof of claim Nicassio filed should be disallowed in its entirety pursuant to Bankruptcy Code Section 502(d) (Count IX).

Although the Defendants filed an answer generally denying liability under the Complaint, raising a counterclaim, and asserting 24 affirmative defenses (Doc. No. 9), they filed no response to the Motion raising factual disputes or otherwise challenging the trustee's entitlement to a summary judgment. Rather, the Defendants appear to have abandoned any defense they may have had to the trustee's Complaint. Because the Defendants received notice of all pleadings and proceedings, have failed to respond or to demonstrate any factual dispute or any reason why a summary judgment should not be entered, the Motion is granted.

Relying on the affidavits submitted by the trustee in support of his Motion,[2] the Court finds that Metro, a Florida corporation, was in the business of rehabilitating sewer lines in Florida. Nicassio was engaged in the same business, primarily in Pennsylvania. When Metro

---

[1] Unless otherwise stated, all references to the "Bankruptcy Code" herein refer to Title 11 of the United States Code.

[2] Two affidavits, each with exhibits, were docketed in support of the Motion. One was filed by Jerold Botts (Doc. No. 35, Botts' Affidavit; Exhibit A - Initial Agreement; Exhibit B – Copies of business cards of Louis and Cudd representing Metro as a division of NGS; Exhibit C – Copy of printout from trade publication denoting Metro as a division of NGS; Exhibit D – Nicassio's Proof of Claim) and the other was filed by the trustee (Doc. No. 36, Fransen's Affidavit; Exhibit A – Nicassio's Proof of Claim and attachments; Exhibit B – Metro's Claims Register, as of April 7, 2007).

started to have financial problems and was insolvent,[3] Nicassio offered to intercede by either acquiring Metro or by merging the two companies into one. Nicassio's merger offer was premised on Nicassio obtaining complete control, management and ultimately ownership of Metro, and upon Botts, Metro's then-president, becoming an employee of the new company with a minority ownership interest.

On April 8, 2005, Metro, through Botts, and Nicassio, through Louis and Cudd, executed an Initial Agreement of Intent to Acquire Business (the "Initial Agreement") (Doc. No. 35, Exhibit A). The Initial Agreement details the formation of a new company, the Nicassio Group South ("NGS"), the salaries for the officials of NGS, and the company's business purpose. NGS was to operate as a division of Nicassio (Doc. No. 35, p. 2, ¶ 2), and Metro, in turn, was to operate as a division of NGS (Doc. No. 35, Exhibit B). The Initial Agreement also provided that NGS would purchase Metro's corporate stock from Botts for $1.00, attempt to obtain releases for any personal guarantees Botts had signed, and assume Metro's debts.

After signing the Initial Agreement, the parties understood Nicassio, through NGS, would immediately assume control of Metro's business affairs. Consistent with this understanding, the parties acted as if the two businesses had indeed merged. Nicassio/NGS started to perform Metro's outstanding contracts. Louis and Cudd took control of Metro's business and financial affairs. Nicassio/NGS paid some of Metro's bills, all as authorized by Louis and Cudd. Any monies received by Metro were deposited into Nicassio's bank accounts.

---

[3] The trustee, in his affidavit, also concludes that the estate has insufficient funds to pay unsecured creditors and that, if administrative claims are allowed in full, the estate may be administratively insolvent (Doc. No. 36, p. 2, ¶ 5).

From April 8, 2005, through October 2005, Nicassio wired nearly all the money Metro received to Nicassio's bank accounts in Pittsburgh (Doc. No. 35, p. 4, ¶ 7). However, these monies earned in connection with Metro's existing contracts, were not used to pay Metro's bills (Doc. No. 35, p. 4, ¶ 7). Rather, the funds were used primarily to pay Louis' personal obligations or to pay Nicassio's debts (Doc. No. 35, p. 5, ¶ 9). Metro received nothing of value in return for these transfers (Doc. No. 35, p. 5, ¶ 9). Botts, as then-president of Metro, had no "material control or direction over the manning or completion of jobs, ordering of inventory and parts, payment of debts, the disposition of cash, or virtually any other aspect of the management of Metro Sewer's business and financial affairs – as such had been assumed . . . by Nicassio acting through [Louis] and Cudd." (Doc. No. 35, p. 5, ¶ 9). Nicassio/NGS purchased supplies using Metro's funds, incurred unsecured debt in Metro's name, and operated from Metro's business location and address (Doc. No. 35, p. 4, ¶ 9).

Nicassio publicized its merger/acquisition of Metro to the outside world. Metro's clients and creditors were informed that Metro was a subsidiary of Nicassio (Doc. No. 35, p. 4, ¶ 8). Louis and Cudd bought and distributed business cards which indicated Metro was a division of NGS (Doc. No. 35, p. 4, ¶ 8). These business cards contained Metro's logo and represented that Louis was president/CEO of Metro and that Cudd was vice president/COO of Metro (Doc. No. 35, Exhibit B). A prominent industry trade directory listed Metro as a division of NGS (Doc. No. 35, Exhibit C).

Meanwhile, Metro and Nicassio apparently continued to negotiate a final agreement for the acquisition/merger of Metro. During this period, Metro's debt increased (Doc. No. 35, p. 6, ¶ 13). Negotiations deteriorated, and Nicassio/NGS abandoned its business relationship with

Metro.[4] After incurring substantial new debt on behalf of Metro, stripping Metro of existing contracts and accounts receivables, and transferring all incoming funds to Nicassio's bank accounts, Nicassio, Louis, and Cudd simply walked away, leaving Metro with increased debt and few assets.

Metro filed this Chapter 7 case shortly thereafter, on October 11, 2005. The trustee then brought this adversary proceeding against the Defendants asserting nine counts, of which six are the subject of the trustee's Motion for Partial Summary Judgment. The Defendants were given 28 days to respond to the Motion (Doc. No. 39). The Defendants filed no pleading or response to the Motion.

Further, on December 21, 2006, the Court ordered the parties to attempt to mediate their dispute (Doc. No. 16). A mediator was selected, and the mediation was scheduled for January 22, 2007; however, because the Defendants did not attend, the mediation did not occur. The Court then issued an Order to Show Cause as to why sanctions should not be imposed for the Defendants failure to comply with the order directing mediation (Doc. No. 26). Although the Defendants did not respond, the mediator's affidavit indicates that counsel for the Defendants had called the trustee's lawyer to notify him that Cudd and Louis would not be attending the mediation because two of the defendants, Louis and Nicassio, consented to the entry of final judgments against them (Doc. No. 28). The Defendants did not attend the hearing, held on June 21, 2007, on the Order to Show Cause and for the oral argument on the trustee's Motion. They apparently do not contest the trustee's version of the facts or that he is entitled to a summary judgment as a matter of law.

---

[4] To that end, the parties discussed the execution of a second contract which contained terms extremely detrimental to Metro. For example, the subcontract stipulated that Nicassio would: (i) keep all of Metro's tangible assets; (ii) receive 98 percent of contractual amounts, and; (iii) not assume responsibility for any of Metro's debts. Botts ultimately refused to sign the further contract.

.

However, even in the face of no opposition, a party seeking summary judgment still must prove "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the opposing party. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). A material factual dispute precludes summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-movant may not simply rely on his pleadings, but must show, by reference to depositions, affidavits or other evidence, that a material issue of fact is present. Roche v. Pep Boys, Inc. et. al. (In re Roche), 361 B.R. 615, 620 (Bankr. N.D. Ga. 2005). Specifically:

> [t]he party seeking summary judgment bears the initial burden to demonstrate to the [trial] court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact . . . If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material facts.

Roche, 361 B.R. at 620 (citing Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). Because the Defendants have filed nothing in opposition to the trustee's Motion, the only question is whether the trustee has satisfied his burden and supplied sufficient information to demonstrate an absence of issues of material fact, by way of affidavits and like evidence, entitling him to a summary judgment as a matter of law on the relevant counts in his complaint.

Count IV: A de facto merger of Nicassio and Metro occurred. In Count IV of the Complaint, the trustee alleges that, as the result of a de facto merger between Nicassio and Metro, Nicassio is liable for all of the claims filed in Metro's bankruptcy case. As discussed in Orlando Light Bulb Serv., Inc. v. Laser Lighting and Elec. Supply, 523 So. 2d 740, 742 (Fla. 5th Dist. Ct. App. 1988), "Florida follows the corporate law rule which does not impose the

liabilities of a selling predecessor corporation [here, Metro] upon the buying successor company [here, Nicassio] unless (1) the successor impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor corporation is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." Orlando Light Bulb, 523 So. 2d at 742 (citing Bernard v. Kee Manufacturing Company, Inc., 409 So.2d 1047, 1049 (Fla.1982); Reina v. Gingerale Corp., 472 So.2d 530 (Fla. 3rd Dist. Ct. App. 1985); cf., Kelly v. American Precision Industries, 438 So.2d 29 (Fla. 5th Dist. Ct. App. 1983). Thus, the Court must consider whether any of the circumstances listed by the court in the Orlando Light Bulb case are present here and justify a deviation from the general corporate law rule that the liabilities of a predecessor corporation are not imposed upon a successor corporation.

In the Initial Agreement, the successor, Nicassio/NGS, specifically assumed most, if not all, the obligations of the predecessor, Metro (Doc. No. 35, Exhibit A). Further, NGS, the successor, was a mere continuation of Metro, as is demonstrated by the business cards and trade publications printed by Nicassio/NGS after they took control of Metro. Louis and Cudd distributed business cards bearing the Metro logo and naming themselves as president/CEO and vice-president/COO, respectively, and a trade directory listed Metro as a division of NGS.

Moreover, the fact that NGS/Nicassio and Metro did, in fact, merge is amply demonstrated by Nicassio/NGS's actions. "A de facto merger occurs where one corporation is absorbed by another without formal compliance with the statutory requirements for a merger," Lab. Corp. of Am. v. Prof'l Recovery Network, 813 So. 2d 266, 270 (Fla. 5th Dist. Ct. App. 2002), and may be present where there is "a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders." Orlando Light Bulb, 523 So. 2d at 743, n.1 (citation omitted). "The bottom-line question is whether

.

each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." Id. (citation omitted).

In this case, the trustee has sufficiently proven that Metro and Nicassio ran a "relay-style race" passing the baton of indebtedness from one to the next. Nicassio performed Metro's contracts. They took control of Metro's bank accounts, paid Metro's bills, and, most significantly, transferred all cash and accounts receivables from Metro's control to accounts of Louis and Nicassio in Pennsylvania. Between April 8, 2005, and September 30, 2005, Louis and Cudd transferred $1,764,743.93 (the "Metro Transfers") from Metro's account into Nicassio's corporate accounts,[5] for which, according to Botts' Affidavit, Metro received no consideration (Doc. No. 35, p. 5, ¶ 9). As best said by Botts, the merged entity "managed the combined operations, as a Nicassio division, from Metro Sewer's location, while utilizing Metro Sewer's supplies, customer lists, equipment and other assets." (Doc. No. 35, p. 3, ¶ 6). For all purposes, Nicassio, upon taking control of Metro, orchestrated a de facto merger.

Nicassio is financially responsible for paying all *allowed* unsecured and priority claims filed in Metro's bankruptcy case. The amount of unsecured and priority claims, as reflected on the claims register, totals $3,436,557.80. However, this amount is clearly overstated because it includes the unsecured claim number 44 of Nicassio in the amount of $1,159,252.43, which is subject to disallowance. As such, by deducting Nicassio's claim, the liability is reduced to a maximum amount of $2,277,305.37. In addition, the Court later may disallow other claims upon future objections, and, if so, Nicassio's liability would be correspondingly reduced by the amount of any future disallowed claims. Therefore, as to Count IV, the Court will enter

---

[5] The amount of transfers from Metro to Nicassio is documented in Nicassio's own proof of claim, which is attached to both Bott's and the trustee's affidavit. Nicassio stated that the $1,764,743.93 was "the total amount paid to Nicassio by Metro in the form of direct payments or payments to vendors on behalf of Nicassio."

.

summary judgment in favor of the trustee in the amount of $2,277,305.37, subject to further reduction for future disallowed claims.[6]

Counts I and II: The trustee may avoid Nicassio's transfers of Metro's property as fraudulent transfers under Sections 548(a)(1)(A) and/or (B). The trustee contends that the Metro Transfers of $1,764,743.93 from Metro's accounts into Louis' or Nicassio's accounts are avoidable as being actually or constructively fraudulent. In order to prove an *actually* fraudulent transfer, the trustee must demonstrate each of the elements of Bankruptcy Code Section 548(a)(1)(A):

> [t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition if the debtor voluntarily or involuntarily . . . (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted.

11 U.S.C. § 548(a)(1)(A) (2005).[7] Thus, a plaintiff seeking to avoid a transfer using Section 548(a)(1)(A) must establish: (1) the transfer of property in fact occurred; (2) the property belonged to the debtor; (3) the transfer occurred within the statutory time period; and (4) the debtor made the transfer with actual intent to hinder, delay or defraud creditors. Kapila v. WLN Ltd. P'ship (In re Leneve), 341 B.R. 53, 56 (Bankr. S.D. Fla. 2006). The crucial element a court first should examine is whether the debtor voluntarily or involuntarily transferred the property

---

[6] Because the Court concludes that a de facto merger between Nicassio and Metro occurred, the Court cannot find that Nicassio and Metro were equal joint venture partners, as alleged by the trustee in Count V. A joint venture necessarily requires joint venture partners to have "(1) a common purpose, (2) a joint propriety interest in the subject matter, (3) the right to share profits and duty to share losses, and (4) joint control or right of control." Williams V. Obstfeld, 314 F.3d 1270, 1275-76 (citing Kislak v. Kreedian, 95 So.2d 510, 515 (Fla. 1957)). Here, finding that Nicassio assumed total control of Metro, there necessarily is no joint control or right of control nor was there any continuing right to share profits. As such, the Court will deny the trustee's Motion as to Count V.

[7] BAPCPA was enacted on April 20, 2005 (Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005)) and became generally effective on October 17, 2005. The new "two year" provision within 11 U.S.C. § 548(a) and (b) became effective for cases filed 1 year after the enactment date, October 17, 2006. Cases filed before October 17, 2006 use the previous one year look back period.

with the actual intent to delay, defraud, or hinder the creditors. <u>Kapila v. Moodie et. al.</u> (<u>In re Moodie</u>), 362 B.R. 554, 563 (Bankr. S.D. Fla. 2007). Fraudulent intent may be established through circumstantial evidence referred to as badges of fraud. <u>Dionne v. Keating</u> (<u>In re XYZ Options, Inc.</u>), 154 F.3d 1262, 1271 (11th Cir. 1998). The common badges of fraud include:

(1) the lack or inadequacy of consideration for the property transferred;

(2) the existence of a family, friendship or other close relationship between the transferor and the transferee;

(3) the transferor's retention of the possession, control, benefits or use of the property in question;

(4) the financial condition of the transferor both before and after the transfer took place, i.e., whether the transfer resulted in insolvency;

(5) the cumulative effect of these transactions and course of conduct after the onset of financial difficulties or dependency or threat of suit by creditors; and

(6) the general chronology and timing of the transfer in question.

<u>Leneve</u>, 341 B.R. at 61.

A *constructively* fraudulent transfer also is avoidable, without the need to show intent to hinder, delay, or defraud a creditor or the related badges of fraud, if:

[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor . . . that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily- . . . (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, . . . .

11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I) (2005). In order to avoid a transfer under Section 548(a)(1)(B), the trustee must establish that:

(1) there was a transfer of interest of the debtor in property,

    (2) the transfer occurred within one year preceding the filing of the bankruptcy petition,

    (3) the debtor received less than a reasonably equivalent value in exchange for this transfer, and

    (4) the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact.

Keith Eickert Power Products, LLC v. Escada (USA), Inc. (In re Keith Eickert Power Products, LLC), 344 B.R. 685, 688 (Bankr. M.D. Fla. 2006) (*citation omitted*).

The trustee has met both of these tests. He clearly has established that there were transfers of the debtor's property in the amount of $1,764,743.93 of Metro's property occurring within one year prior to Metro's bankruptcy petition for which Metro received no consideration and which occurred at a time Metro was insolvent. Metro received no benefit from these transfers, rather, the funds were used to pay Nicassio's expenses or Louis' personal expenses (Doc. No. 35, p. 5, ¶ 9). Thus, trustee can avoid the transfers as constructively fraudulent pursuant to Section 548(a)(1)(B).

In order to demonstrate actual fraud, the trustee also must prove that the transfers were made with the intent to hinder, delay, or defraud the debtor's creditors. Each of the transfers was made involuntarily by the debtor, at the direction of either Louis or Cudd, as a result of the de facto merger between Metro and Nicassio/NGS. Furthermore, sufficient badges of fraud exist to justify a finding of Nicassio's intent to hinder, delay, or defraud creditors under Section 548(a)(1)(A). Neither Nicassio nor Louis paid any consideration for the transfers; however, both Nicassio and Louis received the benefit of the monies. Only the creditors of Metro were harmed. The relationship between Metro and Nicassio was close in that the two entities had merged, and Nicassio/Louis were directing Metro's actions. Moreover, the transfers occurred at a time when Metro was insolvent. Indeed, it appears that Louis designed the merger simply to strip Metro of

its assets for no consideration and for his own benefit with a clear intent to delay, defraud, or hinder the ability of Metro's creditors to get paid. Accordingly, the Court will enter summary judgment in favor of the trustee as to Counts I and II in the amount of $1,764,743.93, which are avoidable fraudulent transfers pursuant to Sections 548(a)(1)(A) and (B).

Count IX: Nicassio's proof of claim is disallowed.  In Count IX, the trustee argues that the Court should disallow claim 44 filed by Nicassio in Metro's bankruptcy case. Bankruptcy Code Section 502(d) provides that:

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550 or 553 of this title or that is a transferee of a transfer avoidable under section . . . 548, . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable . . . .

11 U.S.C. § 502(d) (2005).  Because Nicassio received transfers avoidable under Bankruptcy Code Section 548(a)(1)(A) and (B) and because Nicassio has not repaid the Metro Transfers, Nicassio's proof of claim is disallowed pursuant to Bankruptcy Code Section 502(d).  The trustee is entitled to summary judgment as to Count IX.  Nicassio's claim 44 is disallowed.

Count VI: Cudd and Louis are individually liable for Metro's debts as a result of breaching fiduciary duties they owed to Metro by virtue of the de facto merger.  Lastly, in Count VI, the trustee alleges that Cudd and Louis breached their fiduciary duties to Metro by improperly authorizing the fraudulent Metro Transfers.  In order to hold Cudd and Louis individually liable for the amount of these transfers, the trustee must establish, first, that Cudd and Louis acted as de facto officers of Metro, and, second, as such, they breached their fiduciary duties owing to Metro.

Here, both Cudd and Louis acted as officers of Metro. A de facto officer is one who assumes an office under a colorable claim and then actually discharges the duties of that office, but for some legal reason lacks de jure legal title to that office.  Select Portfolio Servicing, Inc. v.

.

Evaluation Solutions, LLC, No. 3:06-cv-582-J-33MMH, 2006 WL 2691784, at *9 (M.D. Fla. Sept. 20, 2006) (*citation omitted*).  Louis called himself the president, and Cudd called himself the vice-president of Metro.  They had cards printed with these titles. Their authority arose under the Initial Agreement, and they jointly and exclusively managed Metro from April 8 through September 2005. For all purposes, Louis and Cudd were officers of Metro during that period of time.

Further, both Louis and Cudd breached their fiduciary duty to Metro.  "The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006) (*citations omitted*). "Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation." In re Aqua Clear Technologies, Inc., 361 B.R. 567, 575 (Bankr.S.D.Fla.2007) (citing Cohen v. Hattaway, 595 So.2d 105 (Fla. 5th Dist.Ct.App.1992); B & J Holding Corp. v. Weiss, 353 So.2d 141 (Fla. 3rd Dist.Ct.App.1978)). "Corporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." Cohen, 595 So.2d at 107 -108 (citing Tillis v. United Parts, Inc., 395 So.2d 618 (Fla. 5th Dist.Ct.App.1981)). "These fiduciary obligors cannot, either directly or indirectly, in their dealings on behalf of the fiduciary beneficiary with others, or in any other transaction in which they are under a duty to guard the interests of the fiduciary beneficiary, make any profit or acquire any other personal benefit or advantage, not also enjoyed by the fiduciary beneficiary, and if they do, they may be compelled to account to the beneficiary in an appropriate action." Cohen, 595 So.2d at 107-108 (citing Seestedt v. Southern Laundry, Inc., 149 Fla. 402, 5 So.2d 859 (1942); Tinwood, N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th Dist.Ct.App.1990)).

As officers of Metro with fiduciary obligations, Louis and Cudd authorized transfers of essentially all of Metro's liquid assets, $1,764,743.93, at a time when Metro was insolvent and, at least in part, for Louis' personal benefit. They intended to strip Metro of its property for their own aggrandizement and to the obvious harm of Metro. As a result, Metro suffered proximate damages of $1,764,743.9. The Court finds that Louis and Cudd owed, and breached, their fiduciary duty to Metro as de facto officers of Metro by transferring Metro's assets to, or for the benefit of, Nicassio and Louis for no consideration. Accordingly, the Court will grant the trustee's Motion as to Count VI and enter a judgment against Louis and Cudd, individually, in the amount of $1,764,743.93.

In summary, the trustee is entitled to summary judgment as to Counts I, II, IV, VI, and IX of the Complaint, but not as to Count V. No material factual dispute exists, and, although given sufficient notice and opportunity, the Defendants have failed to oppose the trustee's Motion. A separate order and judgment consistent with this memorandum opinion shall be entered simultaneously herewith.

DONE AND ORDERED in Orlando, Florida, this 7th day of August, 2004.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies furnished to:

Plaintiff/Plaintiff's Counsel:  Scott R. Fransen, c/o Andrew M. Brumby, Esq., Shutts & Bowen LLP, PO Box 4956, Orlando, FL  32802-4956

Defendant:  Nicassio Corporation, c/o Corpdirect Agents, Inc., 515 E. Park Avenue, Tallahassee, FL  32301

Defendant:  Stephen Cudd, 914 Edinborough Crescent, Kingston, Ontario, Canada

Defendant:  Louis Nicassio, 9979 Capri Court, Pittsburgh, PA  15239

Defendants' Counsel:  Denise D. Dell-Powell, Akerman Senterfitt, P.O. Box 231, Orlando, FL  32802